IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| MARIO MORRIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:13-CV-02339-STA-dkv |
| | ) | |
| TAMMY FORD, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

ORDER DIRECTING CLERK TO CHANGE RESPONDENT
ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2254,
DENYING A CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

On August 17, 2006, Mario Morris was convicted of aggravated robbery and especially aggravated kidnapping under Tennessee law. He was sentenced to a forty-year term of imprisonment, which was later modified to thirty-six years. Morris thereafter sought state post-conviction relief, which was denied

Proceeding *pro se*, Morris now seeks federal habeas corpus relief challenging his conviction and sentence pursuant to 28 U.S.C. § 2254. (Pet., ECF No. 1.) [1] For the reasons discussed below, the Court denies the petition.

---

[1] Morris, who is designated as Tennessee Department of Corrections prisoner No. 409905, is currently incarcerated at Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee. The petition names as the respondent Cherry Lindamood, who was the warden at WCF at the time the petition was filed. Tammy Ford is the current warden of WCF. Accordingly, pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the Clerk is directed to substitute Ford as the Respondent.

# THE LEGAL STANDARD

Under the federal habeas statute, a federal court may grant habeas corpus relief to a state prisoner "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The federal court's power is further restrained where a prisoner's federal claim was "adjudicated on the merits" in the state courts.  *See* Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Under those circumstances, federal habeas relief "may not be granted" unless:

> the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court, [28 U.S.C.] § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); or . . . "involved an unreasonable application of" such law, § 2254(d)(1); or . . . "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

*Harrington v. Richter,* 562 U.S. 86, 100 (2011).

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413,

There is little case law addressing the "unreasonable determination of the facts" standard of § 2254(d)(2).  The Supreme Court has explained, however, that a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion.  *See Wood v. Allen*, 558 U.S. 290, 301 (2010).  Moreover, although the Sixth Circuit has described the standard as "demanding but not insatiable," it construes the

standard in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2011) (quotation marks and citation omitted).

## BACKGROUND

Following a jury trial in the Shelby County Criminal Court, Mario Morris was convicted of four counts of aggravated robbery and one count of especially aggravated kidnapping. The following background summary is drawn from the Tennessee Court of Criminal Appeals' recitation of the evidence presented at Morris' trial and sentencing hearing. *See State v. Morris*, No. 2006-02345-CCA-R3-CD, 2007 WL 4245720, at *1 (Tenn. Crim. App. Dec. 3, 2007).[2] The procedural facts are drawn from the state court record filed by Respondent (*See* State Rec., ECF No. 13).

### I.     Morris' Trial and Sentencing Hearing

Elisha Wilkins testified that on May 14, 2002, she was alone in her boyfriend's Memphis home when a group of seven or eight men broke into the home demanding to know where "the money" was kept. At least half of the men were armed and they kept telling Wilkins that she should reveal the money's location because they were going to kill her anyway. The men ransacked the home and took Wilkins' wallet and the keys to her vehicle. The men then forced Wilkins into the backseat of her vehicle while four of the men, including Morris, got into the

---

[2] Some portions of the state court's recitation are paraphrased and some are used *verbatim*. For readability, quotation marks for *verbatim* portions have not been used. Cites to the opinions of the Tennessee Court of Criminal Appeals in Morris' case will be in Westlaw citation format only, and will not include the ECF docket number.

vehicle with her. The men held Wilkins at gunpoint while they drove to the home of LaTonya Cooper, who Wilkins had met through her boyfriend.

Wilkins further testified that one of the men held a gun to the back of her head as he forced her to knock on the door and identify herself to Cooper. When Cooper unlocked the door, the same seven or eight men who had been at Wilkins' boyfriend's house forced themselves and Wilkins into Cooper's house. Inside the home, the men placed Wilkins in the bathroom and Cooper in a bedroom. As they searched the home, the men repeatedly asked the women where the money was kept and threatened to kill them. One of them also told Cooper that, if she did not tell him where the money was, he would ask her two young children, who were in one of the bedrooms. At one point, Morris held the women at gunpoint together in one of the bedrooms. As they were leaving the house, the men forced the women to lie face down together on the living room floor. Shortly thereafter, Cooper's husband came home. Wilkins stayed until her boyfriend arrived to take her back to his house, where they telephoned the police.

During her testimony, Wilkins estimated that the men had been at her boyfriend's house for half an hour to an hour and at Cooper's house for about the same amount of time. She testified that both houses were well-lit and that she was within three feet of the men at both locations. She further testified that on May 16, 2002, she had positively identified Morris as one of the perpetrators from a photographic array. She made a positive courtroom identification of Morris and two other defendants and testified that she had also identified each of the defendants at preliminary hearings.[3]

On cross-examination, Wilkins testified that some of the men were wearing masks but that the three defendants on trial, including Morris, were not. She acknowledged that both she

---

[3] Morris was tried with co-defendants Montreal Lyons and Khalfani Marion. *See Morris*, 2007 WL 4245720, at *1.

and Cooper were upset and frightened and that things were chaotic in the home during the incident. She stated on redirect, however, that she was certain of her identification of all three defendants.

LaTonya Cooper testified that shortly after 10:30 p.m. on May 14, 2002, she was in bed watching television while her five- and six-year old daughters were asleep in their bedroom. She heard the doorbell ring and opened the door after Wilkins announced herself. Cooper found Wilkins and "a whole bunch of guys with guns" at her doorstep. She testified that there had been five or six men present and three guns. She stepped backwards, one hand raised, as the men came into the house and locked the door behind them. The men moved around the house, asking for jewelry and money. Cooper gave the money in her purse to one of the men, who kept threatening to kill her, her daughters, and Wilkins. Cooper was brought to her bedroom while one of the men rummaged through her dresser. Wilkins was later brought into the bedroom with her. Cooper testified that it seemed to her as if the men were in her home "forever." She said that, before they left, the men brought her and Wilkins from the bedroom and ordered them to lie face down on the living room floor. She and Wilkins complied, and the men left the house.

Cooper testified that some of the men wore masks, but the three defendants on trial, including Morris, did not. She said the lights were on in the house and the men were as close as two feet at times. She identified Morris and two other defendants from photographic arrays. She also testified that she had positively identified Morris and one other defendant at a preliminary hearing. Cooper made positive courtroom identifications of all three defendants on trial.

On cross-examination, Cooper acknowledged that things were chaotic during the robbery. She reiterated that it seemed like the men were in her home for a long time, and she did not

respond when asked if she would be surprised to learn that Wilkins and her boyfriend had telephoned the police from the boyfriend's house at 11:14 p.m.

Sergeant Timothy Green of the Memphis Police Department, the officer assigned to the case, testified that, on May 16, 2002, he showed both victims a six-person photographic spreadsheet from which each victim positively identified Morris as one of the perpetrators. He said that he conducted the identifications at separate times and neither victim knew which photograph the other had chosen. He stated that Wilkins chose Morris' photograph within five or six seconds of being shown the photographic array. He could not recall how long Cooper took but said that she also identified Morris, circling his photograph and writing that he had not been wearing a mask. On cross-examination, Sgt. Green acknowledged that no fingerprints had been obtained in connection with the case.

Neither Morris nor his two co-defendants testified at trial. They rested their cases without presenting any proof. The jury returned a guilty verdict on all four charges against Morris.

At the sentencing hearing, the only witness was LaTonya Cooper, who testified that she lived in constant fear since the night of the crimes. Cooper testified that that, on the night of the crimes as she and Wilkins were lying of the floor after the men had exited Cooper's house, Wilkins told her that one of the men had put a gun in her mouth while she was standing on the porch, frightening her so much that she had urinated. Morris' counsel objected to the admission of Cooper's hearsay testimony. The prosecution countered that Wilkins was not available to testify and because her statement to Cooper had been an "excited utterance," Cooper's hearsay testimony should be allowed. The court allowed the testimony and Morris' counsel was allowed to cross-examine Cooper. (*See* Sent. Hrg. Tr., ECF No. 13-9 at 8-12.)

After merging the four counts of aggravated robbery into two counts, the trial court sentenced Morris to ten years on each of the aggravated robbery convictions and twenty years for the especially aggravated kidnapping conviction. The court ordered that each of the sentences be served consecutively for a total effective sentence of forty years.

## II.    Post-Trial Proceedings

Morris appealed his conviction and sentence to the Tennessee Court of Criminal Appeals ("TCCA"). The TCCA partially denied relief, but remanded the case for resentencing because the trial court had not made clear whether it was sentencing Morris under a current or prior version of the state's sentencing law. *See Morris*, 2007 WL 4245720, at *1 (hereinafter "Decision I"). On remand, the trial court reduced the sentences on the robbery counts to eight-years each. Combined with twenty years on the kidnapping count, Morris received a total effective sentence of thirty-six years.

Morris appealed his conviction and new sentence. (*See* Morris 2d App. Br., ECF No. 13-17.) The TCCA denied the appeal. *See Morris v. State*, No. W2008-00586-CCA-R3-CD, 2009 WL 856359, at *1 (Tenn. Crim. App. Mar. 30, 2009) (hereinafter "Decision II"). The Tennessee Supreme Court denied permission to appeal. (*See* APA Den., ECF No. 13-21.)

Morris sought post-conviction relief and, with the aid of appointed counsel, filed an amended petition alleging that his trial counsel had been ineffective in several respects. The post-conviction court held an evidentiary hearing and denied relief. Morris appealed. The TCCA affirmed the lower court's decision. *See Morris v. State*, No. W2011-02165-CCA-R3-PC, 2013 WL 100638, at *1 (Tenn. Crim. App. Jan. 8, 2013). The Tennessee Supreme Court denied permission to appeal. (*See* APA Den., ECF No. 13-30.)

### III.    Morris' § 2254 Petition

The habeas petition raises the following claims:

1. Morris' counsel was ineffective for:

    a. Failing to challenge the kidnapping conviction on due process grounds as announced in Tennessee Supreme Court cases;
    b. Failing to investigate mitigating evidence and failing to prepare for the sentencing hearing "to counter the sentencing court's finding that Morris was anti-social and unwilling to lead a productive life"; and
    c. Failing to investigate the misdeeds of Sgt. Green, "who tainted the alleged victims' identification of Petitioner."

2. The evidence was insufficient to support Morris' convictions.

3. The imposition of consecutive sentencing was excessive.

4. The imposition of consecutive sentencing after remand was excessive.

(Pet., ECF No. 1 at 5-9.)

In her answer to the petition, Respondent argues that the Court should deny the petition in its entirety. She contends that Claims 1 and 2 are without merit and that Claims 3 and 4 are not cognizable federal claims. (*See* Ans., ECF No. 12.) The Court addresses Morris' claims in the following order: Claim 2 (sufficiency of the evidence), Claim 1 (ineffective assistance of counsel), and Claims 3 and 4 (excessive sentencing).

## DISCUSSION

### I.    Sufficiency of the Evidence (Claim 2)

Morris asserts that there was insufficient evidence to establish his identity as a perpetrator of the offenses charged. (Pet., ECF No. 1 at 6.) He argues that "[t]he State's only evidence linking him to the crime was the 'tearful testimony' of the victims, which was so inconsistent and full of gaps as to warrant a finding by the Courts that each and every element of each and every charge was not proved beyond a reasonable doubt." (*Id.*) This Court's analysis of Morris'

sufficiency-of-the evidence argument is complicated by his failure to refer to the standards for reviewing habeas claims on the merits and to analyze, in light of those standards, the TCCA's determination that the evidence was sufficient to convict him.[4]  Based on the reasons he supplies in his petition in support of Claim 2, Morris seems to contend that the state court's determination was an "unreasonable application" of the governing federal standards.  28 U.S.C. § 2254(d)(1).  For the following reasons, the Court finds that Morris' sufficiency-of-the-evidence claim (Claim 2) is without merit.

On his first direct appeal from the trial court's judgment, Morris argued that the evidence was insufficient to support a jury's finding of guilt beyond a reasonable doubt on the offenses charged because the victims' identifications of Morris were not reliable.  (*See* Morris. Dir. App. Br., ECF No. 13-11 at 9-10).  In Decision I, the TCCA rejected the argument, but remanded the case to the trial court for resentencing.  *Morris*, 2007 WL 4245720, at *7.  On appeal of the trial court's resentencing determination, Morris once again argued that the evidence was insufficient to convict him of the crimes beyond a reasonable doubt, for the same reason he had presented in his first appeal.  (*See* Morris 2d Dir. App. Br., ECF No. 13-17 at 10-11.)  The State responded that Decision I established the law of the case on this issue, and thus precluded reconsideration of Morris' argument.  (*See* State 2d Dir. App. Br., ECF. No. 13-18 at 3.)  In Decision II, the TCCA rejected the claim on the merits.  *See Morris*, 2009 WL 856359, at *1.  The TCCA's entire analysis in Decision II is a direct quotation from that part of Decision I discussing the eyewitness identifications.  *See id.*

---

[4] Morris did not file a reply in support of his petition, although he was given leave to do so.  (*See* Order, ECF No. 7.)

In that quoted discussion, the TCCA noted that "'[t]he credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made.'" *Id.* (quoting *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999)). The TCCA pointed to two facts which suggested that Cooper and Wilkins' identification testimonies were reliable: (1) the victims viewed the perpetrators "at close proximity in well-lit areas"; and (2) "the defendant's face was not masked," allowing each victim "to get a good look at his features." *Id.* The court also noted that the victims consistently identified Morris: they chose him from a six-person photographic array, identified him at the preliminary hearing, and "positively and unequivocally identified [Morris] at trial as one the participants in the crime." *Id.* Noting that the jury was entitled to assess the witnesses' credibility and reconcile any evidentiary conflicts, the TCCA held that the evidence was sufficient to support the jury's determination that Morris was a perpetrator. *Id.*

Decision II is the "relevant state-court decision" for present purposes because it is the "last state-court decision to adjudicate" Morris' sufficiency of the evidence claim "on the merits." *Akins v. Easterling*, 648 F.3d 380, 387 (6th Cir. 2011). For the following reasons, the Court finds that the TCCA's determination in Decision II that the evidence was sufficient to support Morris' convictions is not an unreasonable application of clearly established Supreme Court precedent.

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases and therefore governs Morris' sufficiency-of-the-evidence claim. *See Coleman v. Johnson*, -- U.S.--, 132 S.Ct. 2060, 2062 (2012) (per curiam) (*Jackson* applies to sufficiency-of-the-evidence claims

on habeas review under § 2254(d)); *Appanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006) (same). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 433 U.S. at 318-19.

By not requiring a reviewing court to "'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt," but, instead, whether "any" rational trier of fact could have so found, the *Jackson* standard is deferential to—that is, "gives full play to"—the role of the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 318 (emphasis in original). *See also Cavazos v. Smith*, --U.S.--, 132 S. Ct. 2, 3 (2011) (per curiam) (under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). The AEDPA adds a layer of deference to *Jackson*'s already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to," or "an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254 (d)(1), or "based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 132 S. Ct. at 2065.

Here, Decision II does not cite *Jackson* or recite its sufficiency-of-the evidence standard. That fact, however, does not render the TCCA's evidence-sufficiency determination an

unreasonable application of *Jackson*.[5]  *See Richter*, 562 U.S. at 98, 99 (a state court's decision need not rely on or cite to Supreme Court precedent to pass muster under § 2254(d)); *see also Fears v. Bagley*, 462 F. App'x 565, 579 (6th Cir. 2012) ("The state court need not identify federal law in its decision to be given deference.") (internal quotation marks and citations omitted).  Instead, the TCCA's evidence-sufficiency determination will survive habeas review as long as it is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement."  *Richter*, 562 U.S. at 103.

The TCCA's determination that the evidence was sufficient to convict Morris falls well above the fair minded jurist minimum.  When the evidence is construed in the light most favorable to the prosecution, as *Jackson* requires, *see* 433 U.S. at 319, the fact that Morris was not wearing a mask and that the crime scenes were well-lit easily suggest that the victims' identifications of Morris were reliable.  In addition, although not emphasized in Decision II, the record shows that each victim had spent more than a passing moment with the perpetrators.  *See Morris*, 2007 WL 4245720, at *2 ("Wilkins estimated that the men were [with her at her boyfriend's] house for half an hour to an hour and at Cooper's house for about the same amount of time").  From all of that evidence, a rational trier of fact could have concluded beyond a reasonable doubt that Morris was a perpetrator of the crimes for which he was convicted.  *See e.g.*, *Jackman v. Rees*, 803 F.2d 720 (6th Cir. 1986) (unpublished table decision) (applying *Jackson* and holding that "the in-court identifications of [the defendant] were sufficient to support his conviction" where the "witnesses who identified [him] in court had had a total of

---

[5] Decision II can also be fairly read as resting on the *Jackson* analysis from Decision I. The Court need not reach that question because the reasoning explicitly set forth in Decision II easily supports the denial of habeas relief, as discussed herein.

approximately one hour to observe him on two different occasions" and the defendant "was not wearing any type of disguise at the time of the" crimes). Accordingly, the Court finds that the TCCA reached a conclusion that was not at odds with, but indeed was wholly consistent with, *Jackson*. Morris has therefore not met his burden of showing that the TCCA's determination was an unreasonable application of clearly established Supreme Court precedent.

For these reasons, Morris is not entitled to habeas relief on his sufficiency-of-the-evidence claim.

## II. Ineffective Assistance of Counsel (Claim 1)

In Claim 1, Morris argues that his trial attorney, who also represented him on direct appeal, rendered ineffective assistance in violation of the Sixth Amendment by (a) failing to investigate his background and introduce mitigation evidence at sentencing; (b) failing to investigate the "misdeeds" of Sgt. Green, who allegedly directed the victims' identification of Morris during the preliminary hearing; and (c) failing to raise a due process challenge to his dual convictions for robbery and kidnapping under the precepts set forth in the Tennessee Supreme Court's decision in *State v. Anthony*, 817 S.W.2d 29 (Tenn. 1991). (Pet., ECF No. 1 at 5.) These are the same grounds Morris raised in his post-conviction proceedings and in his unsuccessful appeal from the post-conviction court's denial of his petition following an evidentiary hearing. (*See* Post-Conv. Tr., ECF No. 13-25 at 9-16; Morris Post-Conv. Br., ECF No. 13-26 at 5.) For the following reasons, the Court finds that Claim 1 is without merit.

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel at trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Under *Strickland*, a criminal defendant claiming ineffective assistance of counsel must "show both that his counsel provided deficient assistance and that there was prejudice as a result." *Richter*, 562 U.S. at 104 (citing

*Strickland*, 466 U.S. at 688). Because a criminal defendant is entitled to the effective assistance of counsel on his first appeal of right, *Strickland*'s standards also apply in the appellate context. *Evitts v. Lucey,* 469 U.S. 387, 396 (1985).

*Strickland*'s deficient-performance prong requires "a person challenging a conviction [to] show that 'counsel's representation fell below an objective standard of reasonableness.'" *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 688). To prove deficient performance, the challenger faces

> a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. [*Strickland*, 466 U.S.] at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

*Id.*; *see also Darden v. Wainwright*, 477 U.S. 168, 186 (1986) (trial counsel's trial strategy is presumed to be sound); *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (appellate counsel's decision to pursue some issues but not others is presumed to be sound). "Judicial scrutiny of counsel's performance," in other words, "must be highly deferential." *Strickland*, 446 U.S. at 689.

To meet *Strickland's* prejudice prong, a criminal defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Thus, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687, 693).

In proceedings under § 2254(d), a federal court's review of the state court's ineffective-assistance determination is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). As the Court in *Richter* explained:

> Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. . . . Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so.

*Richter,* 562 U.S. at 105 (citations omitted). Accordingly, the foundational question facing the federal habeas court in its review of a state court's ineffective-assistance determination is not "whether defense counsel's performance fell below *Strickland*'s standard." *Id.* at 101. Instead, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.*

The Court thus reviews the state court's adjudication of Morris' ineffective assistance claim through this highly deferentially lens. As an initial matter, the Court notes that Morris has not developed any argument in support of Claim 1. Nevertheless, based on his petition, it appears that Morris challenges some of the state court's factual determinations, as well as its application of the governing federal standards.[6]

### A. The Post-Conviction Hearing

At the evidentiary hearing on Morris' petition for post-conviction relief, Morris' appointed counsel called Morris and Morris' former counsel as witnesses. (*See* Post-Conv. Tr., ECF No. 13-25.) Trial counsel testified that he had represented Morris at his criminal trial and on appeal.[7] He recalled that he had considered raising an *Anthony* due process issue. He could

---

[6] The TCCA analyzed all three of Morris' ineffective assistance of counsel arguments under the two *Strickland* prongs. *See Morris*, 2013 WL 100638, at *3-5. Therefore, the TCCA's determination was not "contrary to" controlling federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

[7] This summary of the testimony is taken from the TCCA's post-conviction decision. *See Morris*, 2013 WL 100638, at * 2. Some portions of the TCCA's recitation are paraphrased and some are used *verbatim*. For readability, quotation marks for *verbatim* portions have not been used.

not remember his analysis of the issue but did recall that the two issues he ultimately raised on appeal were in his estimation Morris' two "best" issues. Trial counsel was confident that he had investigated Morris' background in preparation for the sentencing hearing. He recalled discussing sentencing with Morris several times, but could not remember the specifics. Although he believed that he never had Morris evaluated for mental illness or mental incompetency, he never saw anything in the several years he represented Morris to indicate that an evaluation was warranted.

Trial counsel further testified that he had no memory of Morris telling him that a police officer had pointed Morris out to the witnesses at the preliminary hearing. He was confident, however, that had Morris relayed such information to him, he would have brought the information to the judge's attention and, more likely than not, he would have filed a motion to suppress the identification.

Morris' testimony was limited to the issue of Sgt. Green's alleged misconduct. Morris testified that, at his preliminary hearing, Sgt. Green walked in with the two victims, pointed to him and his two co-defendants, whispered in one of the victim's ear, and then turned and left the courtroom. Morris said he notified trial counsel about what he had seen, but counsel kept brushing him off—first telling him that he would try to get the identification thrown out when the case was moved "upstairs" and then later, after Morris brought it up again, that Morris was raising "frivolous" issues.

Morris testified that he mentioned the matter in a letter he sent to counsel and in complaints about counsel he made to the Better Business Bureau and the Board of Professional Responsibility. On cross-examination, Morris stated that he did not have copies of those

documents with him.  Morris acknowledged that the victims had identified him from photographic arrays "per Sergeant Green" prior to the preliminary hearing.

### B.  Failure to Investigate Morris' Background and Present Mitigating Evidence

Affirming the post-conviction court's denial of Morris' petition, the TCCA held that Morris' counsel's investigation of mitigating evidence was not deficient and was not shown, in any event, to have prejudiced Morris.  *See Morris*, 2013 WL 100638, at *4.  Explaining why Morris had not met the deficient-performance prong, the TCCA stated:

> The record fully supports the findings and conclusions of the post-conviction court. Trial counsel was confident that he investigated the petitioner's background and had several discussions with him about sentencing. He also explained why he did not request a mental evaluation, testifying that he never saw any signs to indicate that the petitioner was not competent to stand trial during the years that he represented him. The petitioner has not, therefore, met his burden of demonstrating that counsel was deficient in his representation for failing to investigate his background.

*Id.*

With regard to prejudice, the TCCA reasoned:

> Moreover, as the post-conviction court noted, the petitioner himself failed to present any witnesses or other mitigation evidence at the evidentiary hearing and thus cannot meet his burden of demonstrating prejudice. In order to succeed on a claim that counsel did not properly investigate or call favorable witnesses at trial or sentencing, a petitioner must generally elicit favorable testimony from those witnesses at the evidentiary hearing, as a post-conviction court may not speculate "on the question of ... what a witness's testimony might have been if introduced" at trial. *Black v. State,* 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

*Id.*

The TCCA's decision is an objectively reasonable application of *Strickland*.  Under *Strickland,* defense counsel has a "duty to make reasonable investigations" in preparation for sentencing or "to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691; *see also Morris v. Carpenter*, 802 F.3d 825, 843 (6th Cir. 2015)

("'An attorney's failure to reasonably investigate the defendant's background and present mitigating evidence to the jury at sentencing can constitute ineffective assistance of counsel.'") (quoting *Goodwin v. Johnson,* 632 F.3d 301, 318 (6th Cir. 2011)). Here, the Court need not decide whether the TCCA reasonably determined that counsel fulfilled his duty to investigate potentially mitigating evidence because it finds that the TCCA reasonably concluded that Morris was not prejudiced by his counsel's actions or omissions. *See Strickland*, 466 U.S. at 697 ("lack of sufficient prejudice" alone supports a determination that a criminal defendant was not deprived of the effective assistance of counsel).

A criminal defendant alleging prejudice from trial counsel's failure to properly investigate and present mitigating evidence at sentencing must show that there is a "reasonable probability," *id.* at 694, that the mitigating evidence not presented would have changed the outcome. *See Cullen v. Pinholster*, 563 U.S. 170, 200 (2011) (denying habeas relief where "[t]here was no reasonable probability that [petitioner's] additional evidence" in mitigation would have changed the sentence); *see also Morris*, 802 F.3d 825 at 843 (habeas petitioner claiming that trial counsel was ineffective in investigating and presenting mitigating evidence at sentencing "must present new evidence that differs both in strength and subject matter from the evidence actually presented at sentencing."). Because Morris did not present *any* mitigating evidence at the post-conviction hearing, the TCCA reasonably concluded that he did not establish that he was prejudiced by counsel's alleged failure to adequately investigate his background or present mitigating evidence at sentencing.

Accordingly, the Court finds that Morris has failed to satisfy his burden of demonstrating that the TCCA's decision was an unreasonable application of *Strickland*. He is therefore not

entitled to habeas relief on his allegation that his counsel did not properly investigate his background and present mitigating evidence at his sentencing hearing.

## C. Failure to Investigate Sgt. Green's "Misdeeds"

The TCCA rejected Morris' argument that trial counsel was ineffective in failing to investigate Sgt. Green's alleged tainting of the identifications at the preliminary hearing. *Morris*, 2013 WL 100638, at *5. It upheld the post-conviction court's determination that Morris had not met either the deficient-performance or the prejudice prong of *Strickland's* test. *Id.*

The heart of the TCCA's deficient-performance determination was its factual conclusion that Morris did not tell trial counsel about Sgt. Green's alleged misdeed:

> As for trial counsel's failure to investigate the alleged tainted witness identification, trial counsel's testimony, which was specifically accredited by the post-conviction court, established that the petitioner never informed counsel about Sergeant Green's alleged actions in pointing him out to the witnesses at the preliminary hearing. The petitioner cannot show that counsel was deficient for failing to act on information that he never received.

*Id.*

Morris fails to show that the TCCA's factual determination was unreasonable. Although Morris testified that he told his trial counsel about Sgt. Green's actions, the post-conviction court was entitled to find trial counsel's testimony to be more credible than Morris' testimony. *See Rice v. Collins,* 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree ... but on habeas review that does not suffice to supersede the trial court's credibility determination."). The state court's determination is entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(d)(2), which Morris has not submitted. Accordingly, the TCCA's conclusion that Morris never told his

counsel about Sgt. Green's misdeeds was a reasonable determination of fact based on the evidence presented.

As for the TCCA's conclusion that Morris failed, in any event, to demonstrate prejudice, that determination does not constitute an unreasonable application of the second prong of *Strickland*'s test. *See* § 2254(d)(1). The TCCA explained:

> We, further, note that these two witnesses had already identified the petitioner as one of the perpetrators from earlier photographic lineups and that the petitioner presented no evidence at the evidentiary hearing to show that a motion to suppress the witness identification would have been successful. Although the petitioner alleges in his petition and brief that Sergeant Green directed the witnesses' identification of him during the photographic arrays as well as at the preliminary hearing, he presented no testimony or other evidence to that effect at the evidentiary hearing. Thus, the petitioner is also unable to show that he was prejudiced by counsel's alleged deficiency in performance.

*Morris*, 2013 WL 100638, at *5.

This Court has little to add to that sound analysis. At the post-conviction hearing, Morris presented no evidence to support his argument that he was prejudiced by his trial counsel's alleged failure to investigate Sgt. Green's conduct. (*See* Post-Conv. Tr., ECF No. 13-25.) Moreover, in a short colloquy with Morris, the post-conviction judge confirmed that the victims had already identified Morris as a perpetrator prior to the preliminary hearing. (*See id.* at 35.) (Court: "So you were picked out of a picture by these people before the Preliminary Hearing, is that right?" Morris: "Yes, sir."). As the TCCA points out, Morris did not present any evidence to support his bald assertion that Sgt. Green also interfered with those earlier photo-array identifications. *See Morris*, 2013 WL 100638, at *5.

Because the TCCA's determination was not based on an unreasonable factual determination or constituted an unreasonable application of *Strickland*, Morris is not entitled to federal habeas relief on the ground that trial counsel failed to investigate Sgt. Green's actions.

### D. Failure to Pursue *Anthony* Challenge

Morris claims that his counsel was ineffective by failing to challenge at trial and on direct appeal his dual convictions for robbery and kidnapping under the due process standards set forth in *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991). (*See* Pet., ECF No. 1 at 5.) In *Anthony*, the Tennessee Supreme Court "held that due process considerations prevent dual convictions for kidnapping and another felony when the kidnapping is 'essentially incidental' to the accompanying felony." *Morris*, 2013 WL 100638, at *5 (quoting *Anthony*, 817 S.W.2d at 305). A kidnapping will not be "incidental" when "'the movement or confinement of the victim was beyond that necessary to consummate the accompanying crime'" and "'prevented the victim from summoning help,'" "'lessened the defendant's risk of detection,'" or "'created a significant danger or increased the victim's risk of harm.'" *Id.* (quoting *State v. Dixon*, 957 S.W.2d 532, 535 (Tenn. 1997)).

The post-conviction court rejected Morris' argument that his counsel had rendered ineffective assistance by not pursuing an *Anthony* challenge to his dual convictions for robbery and kidnapping. *See id.* at *3, 5. On appeal, the TCCA affirmed the lower court's determination. *See id.* at *5 (citing *Anthony*, 817 S.W.2d at 305).[8] The TCCA applied *Strickland*'s standards and held that Morris had not shown that his attorney's performance was deficient or that Morris had been prejudiced by it. *Id.* Key to the TCCA's determination was its conclusion that Morris "would not have succeeded with his due process argument under either the *Anthony* or the *Dixon* tests." *Id.*

---

[8] The Tennessee Supreme Court partially overruled *Anthony* and *Dixon*, *see State v. White*, 362 S.W.3d 559, 578 (Tenn. 2012), but those cases represented the operative law at the time of Morris' conviction.

Morris has not shown, here, that the TCCA's decision was an unreasonable application of *Strickland*. The likelihood of Morris succeeding under *Anthony* is relevant to whether his attorney, acting as both trial and appellate counsel, performed reasonably in foregoing an *Anthony* challenge. *See Strickland* 466 U.S. at 687 (trial counsel's performance is not constitutionally deficient where it does not rise to a level of "serious" error); *Smith*, 528 U.S. at 288 ("'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome.'") (*quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)); *see also Holmes v. United States*, 281 F. App'x 475, 482 (6th Cir. 2008) ("Trial counsel was not ineffective for failing to file a motion . . . that would have been meritless."). The merit of an *Anthony* challenge is also relevant to whether Morris was prejudiced by his attorney's decision. *See Strickland* 466 U.S. at 694 (in order to demonstrate prejudice a criminal defendant must show that there is "a reasonable probability that" the outcome would have been different "but for counsel's" decision). The TCCA's conclusion that an *Anthony* challenge would have been futile is supported by the facts adduced at the criminal trial. Specifically, the facts suggest that the kidnapping of Wilkins was not "incidental to" robbing her. *Anthony*, 817 S.W. 2d at 305. Confining Wilkins to her vehicle and then moving her to Cooper's house arguably went "beyond" what was necessary to accomplish the robbery. *Dixon*, 957 S.W. 2d at 535. Moreover, the additional movement and confinement of Wilkins arguably lessened Morris' risk of detection and created a significant risk of harm to Wilkins, as she was trapped in a vehicle at gunpoint. *See Morris*, 2007 WL 4245720, at *2 (testimony of Wilkins). Accordingly, because the TCCA was not unreasonable in concluding that an *Anthony* challenge would have been meritless, it was likewise not unreasonable in determining that Morris had not been deprived of effective assistance of counsel when his

attorney decided not to pursue the issue. Morris has not, therefore, met his burden of showing that the TCCA unreasonably applied *Strickland*'s standards.

For all the reasons discussed, Morris has not shown, on the three grounds advanced in his petition, that the state court was unreasonable in its determination that he was not deprived of the effective assistance of counsel in violation of the Sixth Amendment. The Court therefore denies relief under Claim 1.

### III.    Excessive Sentencing (Claims 3 & 4)

In Claims 3 and 4, Morris states that his sentence is excessive because the sentencing judge should not have imposed his sentences consecutively. (Pet., ECF No. 1 at 8-9.) For the following reasons, the Court finds that Morris is not entitled to relief on Claims 3 and 4.

In his first direct appeal from his conviction and sentence, Morris challenged his sentence as excessive under Tennessee law. (*See* Morris Dir. App. Br., ECF No. 13-11 at 11-17.) He argued that the sentencing judge erred by imposing a consecutive sentence under that portion of Tennessee's sentencing statute that sets forth the prerequisites for consecutive sentences, Tenn. Code Ann. § 40-35-115. (*See id.*) He contended that the sentencing judge failed to make proper predicate findings for the imposition of consecutive sentences under the state statute and pursuant to the requirements set forth in the Tennessee Supreme Court's decision in *State v. Wilkerson*, 905 S.W. 2d 933, 937-8 (Tenn. 1995). As part of his predicate findings argument, Morris contended that the court improperly admitted into evidence, and relied upon, Cooper's hearsay testimony about what happened to Wilkins on the porch. (*See* Morris Dir. App. Br., ECF No. 13-11 at 15.)

The TCCA rejected Morris' argument that the sentencing judge had improperly imposed a consecutive sentence. *Morris*, 2007 WL 4245720, at *7-8. The appellate court found that the

judge's factual findings were supported by the record and that his decision to admit Cooper's hearsay testimony as an "excited utterance" was proper under state evidentiary law. *Id.* at *7-8. The TCCA did, however, identify an error in the sentencing judge's imposition of Morris' sentence under later-enacted amendments to the state's sentencing statute. *Id.* at *9. It remanded the case to the trial court for resentencing. *Id.*

On direct appeal after resentencing, Morris raised, among other issues, the same arguments against the imposition of consecutive sentences that he had unsuccessfully pressed in his first direct appeal. (*See* Morris 2d App. Br., ECF No. 13-17 at 5.) The State responded that Decision I established the law of the case on the consecutive sentencing, and thus precluded reconsideration of those arguments. (*See* State 2d App. Br., ECF. No. 13-18 at 3.) The TCCA agreed with the State that it should not revisit Morris' consecutive sentencing arguments. *See Morris*, 2009 WL 856359, at *2.

Here, Claim 3 challenges the imposition of consecutive sentences on the grounds that "[t]he trial court failed to make the additional *Wilkerson* findings, by finding that he 'refused to live a productive life,' and 'resorted to criminal activity to further his anti-societal state' and by relying on Cooper's hearsay account of what had happened to Wilkins while she was standing on the porch of Cooper's home." (Pet., ECF 1 at 8-9.) Claim 4 challenges the consecutive sentencing after remand. (*Id.* at 9.) The Court construes the *pro se* claims as a single claim challenging Morris' sentence after remand as excessive.

Morris is not entitled to federal habeas corpus relief on his consecutive sentencing claim because it is "not [a] cognizable" federal claim. *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003). Habeas corpus relief is available only on the ground that the state prisoner is in custody in violation of the Constitution or laws or treaties of the United States, 28 U.S.C. 2254(a), and

therefore will "not lie for errors of state law." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991). The question of whether or not the state court erred in sentencing Morris to consecutive terms is a matter of state, not federal, law. *See Howard*, 76 F. App'x at 53 ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *see also Kissner v. Palmer*, --F.3d--, No. 16-1320, 2016 WL 3448153, at *3 (6th Cir. June 23, 2016) (generally, "errors in the application of state sentencing guidelines . . . cannot independently support habeas relief"). That is true, as well, of the hearsay issue imbedded in Morris' consecutive sentencing argument. *See Estelle*, 502 U.S. at 67-68 (an issue of evidence admissibility is not of constitutional magnitude unless it is so egregious that petitioner was denied a fundamentally fair trial); *see also Kelly v. Withrow,* 25 F.3d 363, 370 (6th Cir. 1994) ("Errors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.") Morris does not present any argument here that the consecutive sentences, or relatedly, the admission of hearsay at sentencing, violated his federal rights. His claim is therefore not properly before this Court.

Even assuming, however, that Morris' specific challenge to Cooper's hearsay testimony raises a federal issue that was fairly presented to the state court,[9] Morris' claim would fail on the merits. "[E]videntiary inclusiveness is the order of the day at sentencing, a frame of reference as

---

[9] Because Morris did not present his challenge to the hearsay evidence as a federal claim in the state courts, and has not attempted to demonstrate why he should be excused for not having done so, he is barred from raising the hearsay issue as a federal claim in this habeas proceeding. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (a state prisoner who does not bring his federal claim to the state court before seeking federal habeas relief must demonstrate cause for the default and actual prejudice, or must demonstrate that a failure of the habeas court to consider the claims will result in a fundamental miscarriage of justice).

likely to facilitate leniency as to impede it." *United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013) (citing *Roberts v. United States,* 445 U.S. 552, 556 (1980)). Because "[t]he key question is reliability," sentencing judges may admit evidence "otherwise inadmissible at trial so long as the evidence is reliable." *Id.* (citing *Roberts,* 445 U.S. at 556); *see also Stewart v. Erwin,* 503 F.3d 488, 495-98 (6th Cir. 2007) (due process is implicated when a sentencing judge relies on "materially false or unreliable information in sentencing a defendant") (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948)). Here, Cooper testified that Wilkins made her statements while they were lying face down in Cooper's bedroom, as commanded by the perpetrators. The TCCA was therefore not unreasonable in concluding that the hearsay evidence was reliable because it recounted Wilkins' "excited utterance."

For these reasons, Morris' request for habeas relief on the ground that his sentence is excessive is denied.

The Court having found that Morris is not entitled to habeas corpus relief on any of the claims he advances, the petition is denied. Judgment shall be entered for Respondent.

## APPEAL ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the

required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Cockrell*, 537 U.S. at 336; *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). Although a COA does not require a showing that the appeal will succeed, *Cockrell*, 537 U.S. at 337, a court should not issue a COA as a matter of course. *Bradley*, 156 F. App'x at 773.

In this case, there can be no question that the § 2254 petition is meritless for the reasons previously stated. Because any appeal by Morris on the issues raised in his § 2254 Petition does not deserve attention, the Court denies a certificate of appealability.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5). In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore certified, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is denied.[10]

IT IS SO ORDERED this the 30th day of August, 2016.

---

[10] If Morris files a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days of the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).

**s/ S. Thomas Anderson**
S.THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE